107

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**W. AUSTIN COOPER,**
A PROFESSIONAL CORPORATION
**W. AUSTIN COOPER, #030652**
2525 Natomas Park Drive, Suite 320
Sacramento, CA 95833
Telephone: (916) 927-2525
Facsimile: (916) 920-0355
austincooperlaw@yahoo.com

Attorneys for the Debtors
and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA
#### (San Jose Division)

In re

MANUBEN KARSHANBHAI PATEL,
aka MANUBEN PATEL; dba TORCH
LITE INN; dba MOTEL 6; dba MOTEL
SANTA CRUZ; dba BEST WESTERN
TORCH LITE INN

 

    Debtor and
    Debtor-in-Possession

_____/

Case No. 11-54812

Chapter 11

DEBTOR'S OPPOSITION TO PACIFICA
L 33, LLC'S MOTION FOR RELIEF
FROM AUTOMATIC STAY

| | |
|---|---|
| Cont. Hearing: | 7/20/11 |
| Time: | 2:00 pm |
| Place: | U.S. FEDERAL BLDG. |
| | 280 S. FIRST ST. |
| | SAN JOSE, CA. |
| | COURTROOM-3070 |
| Judge: | Charles Novack |

    Manuben Patel, the debtor and debtor-in-possession, through her counsel, opposes

the Motion for Relief from Stay ("the Motion") brought by Pacifica L 33, LLC

("Movant") as follows:

## BACKGROUND

    Manuben Patel (the "Debtor") filed bankruptcy under Chapter 11 of the United

States Bankruptcy Code on May 19, 2011. On June 13, 2011, Pacifica L 33, LLC's

1

("Movant") filed a motion for relief from stay. Movant's motion seeks an order authorizing it to exercise its rights and remedies under the law and its loan documents in connection with real property commonly known as 500 Riverside Avenue, Santa Cruz, California (the "Property").

## ARGUMENT

This Opposition is submitted in response to Pacifica L 33, LLC's Motion for Relief from the Automatic Stay. The facts set forth below and in the Declaration of Manuben Patel, submitted in support of and contemporaneously with this Opposition, establish that Movant is not entitled from the automatic stay under either 11 U.S.C. section 362(d)(2) or 11 U.S.C. section 362(d)(1). Movants' Motion argues for relief from automatic stay pursuant to 11 U.S.C. section 362(d)(1) and/or section 362(d)(2) stating cause to terminate the automatic stay on the grounds that (1) Debtor has no equity in the property, that (2) Debtor cannot provide adequate protection, and that (3) the property is not necessary for an effective reorganization.

The Motion for Relief from Automatic Stay must be denied because (1) Debtor has equity in the property which is the subject of this motion, (1) Debtor has attempted to provide adequate protection to Pacifica L 33, LLC, and (3) the property is necessary for an effective reorganization. Debtor needs to continue to use the property as a hotel to generate the income flow to fund her plan and also to sell this asset to realize the equity in it to further fund her plan, if necessary.

Additionally, Debtor has requested reinstatement figures from Pacifica L 33, LLC to cure her loan, but to this date have not received reinstatement figures from Movant.

## I.

### THE ESTATE HAS EQUITY IN THE PROPERTY LOCATED AT 500 RIVERSIDE AVENUE, SANTA CLARA, CALIFORNIA AND IT IS NECESSARY TO AN EFFECTIVE REORGANIZATION.

### A.

2

## PACIFICA L 33, LLC IS NOT ENTITLED TO RELIEF FROM STATE BECAUSE THERE IS EQUITY IN THE PROPERTY

The Motion for relief from the automatic stay must be denied. Debtor, an individual, has equity in the property which is the subject of this Motion. The property is a 38 unit motel known as the Torch Lite Inn. According to the appraisal of Tom Plumb (License No. AG004304) of Independent Real Estate Research the property has a value of $2,500,000.00 as of April 7, 2011 (See Declaration of Tom Plumb filed concurrently with this motion). Debtor is informed and believes that the value of the property is approximately 2.5 million. See Appraisal Report attached as Exhibit "1". The Movant claims a debt of approximately $2,412,230.42. There is a substantial equity cushion in the Property above the amount of Movant's claim. Movant's interest in the Property is adequately protected.

Noticeably absent from Pacifica's Motion is any evidence of the value of the property as appraised by a qualified residential appraiser. The Relief from Stay Information sheet describes the subject property as being real property commonly known as 500 Riverside Avenue, Santa Cruz, California. Movant's motion does not set forth Movant's value of the property and no other admissible evidence of value is offered.

Under 11 U..C. section 362(g)(1), Pacifica L 33, LLC bears the burden of proof with respect to the issue of the Debtor's equity in the property. Pacifica L 33, LLC did not conduct it's own appraisal of the property to determine the true and correct value of the property.

The following liens represent the total encumbrances against the property:

1. Pacifica L 33, LLC's first deed of trust encumbrance of $2,412,230.42

2. Commercial Reality Experts second deed of trust encumbrance of $1,450,000.00

3. City of Santa Cruz abstract judgment for $1,000,000.00 (judgment on appeal)

4. The property is also encumbered by real estate tax liens in favor of the County of Santa Cruz for taxes owed in 2006-2007 and 2010-2011 (January-March) in the

3

1    approximate amount of $93,000.00.

2          Currently the total encumbrance against the property is approximately

3    $4,955,230.42.

4          Debtor has been in negotiations with Commercial Realty Experts, holders of the

5    second deed of trust. Commercial Realty Experts has agreed to convert most of it's

6    $1,450,000.00 secured interest into equity. The claim of the City of Santa Cruz from the

7    abstract judgment for one (1) million is on appeal and not final. Third parties are in

8    negotiations with the City of Santa Cruz to remove this City lien from the property and

9    have offered substantial sums to do this. Delinquent taxes will be place on a five year

10   plan and paid in the debtor's Chapter 11 Plan. Additionally, this claim is spread over

11   three properties.

12         Under these circumstances, Debtor submits that Pacifica L 33, LLC  has failed to

13   meets its burden under Section 362(g) of providing that the estate lacks equity in the

14   subject property as required for relief under Section 362(d)(1) and/or Section 362(d)(2).

15         Pacifica L 33, LLC is not entitled to relief from the stay because Pacifica L 33,

16   LLC's  security interest is adequately protected. Pacifica L 33, LLC argues that the Court

17   should grant it relief from stay to foreclose because Debtor is in default and has not made

18   payments to it since Triumph Bank assigned its interest to Pacifica L 33, LLC on May 2,

19   2011, and its interest is not adequately protected. However, Pacifica L 33, LLC's

20   secured interest is adequately protected by an "equity cushion" in the Property. The Ninth

21   Circuit has specifically held that the existence of an equity cushion, standing alone, can

22   provide adequate protection. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th

23   Cir. 1984). See also, *McCombs Properties VI v. First Texas Savings Association (In re*

24   *McCombs Properties VI)*, 88 B.R. 261, 265 (C.D. Cal. 1988). The Ninth Circuit further

25   stated that although the existence of an equity cushion as a method of adequate protection

26   is not specifically mentioned in 11 U.S.C section 361, it is the classic form of protection

27

28                                                4

for a secured debt, justifying the restraint of lien enforcement by a bankruptcy court. *Id*. The Ninth Circuit in *Mellor* decided that a 20% equity cushion was adequate protection for a secured creditor and referred to cases in which a 10% or 15% equity cushion was sufficient. *In re Mellor* at 1401. An equity cushion is the value in the property above the amount owed to the creditor with a secured claim that will shield that interest from loss due to any decrease in the value of the property during the period of time the automatic stay remains in effect and does not include any junior encumbrances or other amounts. *In re Mellor*, fn. 2 at 1400. Here, taking into consideration the appraised value of the property and Pacifica L 33, LLC's loan balance, Debtor believes that there is equity cushion in her case. Pacifica L 33, LLC's security interest is adequately protected by the exiting equity cushion in the Property therefore Pacifica L 33, LLC is not entitled to relief from the stay.

Since the inception of this Chapter 11, the debtor has been making adequate protection payments of $13,200.00 per month, constituting the interest on Pacifica's loan. For July and subsequent months this will be increased to Pacifica's full monthly payment at the contract rate.

**B.**

**THE PROPERTY IS NECESSARY FOR THE DEBTOR'S REORGANIZATION**

Debtor submits that the subject property is necessary to an effective reorganization. The dicta, in *United Savings Association of Texas v. Timbers of Inwood Forest*, 108 S. Ct. 626 (1988), suggests that in response to a motion for relief from stay under Section 362(d)(2), the opposing party need only show a reasonable possibility of a successful reorganization within a reasonable amount of time. Here, Debtor is in the hotel business of renting rooms in the 38 unit motel to guest.

Debtor's property is her business. Debtor needs to retain her property to conduct

5

business.  Debtor's property is necessary for an effective reorganization since her plan will be funded from income generated from guest staying at the hotel and the possible sale of her property if necessary to fund the plan to pay off creditors.  The Debtor's chapter 11 proceeding is in its early stages, the plan exclusively period has not elapsed, and the Debtor is moving towards an effective reorganization that clearly exists and no contrary evidence has been offered by Pacifica L 33, LLC.

Because Pacifica L 33, LLC has not met its burden of proof on the issue of equity and the Debtor has carried hers, relief is not available under Section 362(d)(2).  In addition, the debtor has established reasonable prospect of a reorganization and that the property is necessary for the reorganization.

## NON-WAIVER OF F.R.C.P. RULE 43(e) AND SEPARATE STATEMENT OF DISPUTED FACTS AND NON-WAIVER OF FACTUAL ISSUES DETERMINED BY DECLARATIONS AND REQUEST FOR EVIDENTIARY HEARING

| Moving Party | a. Denies Movant has standing to bring motion |
|---|---|
| a. Contends Movant has standing to bring motion | b. Denies Movant has any economic interest |
| b. Moving party claims economic interest in note and deed of trust | c. Disputes and wants to exam |
| c. Contends possession of original note | d. Disputes and wants to depose |
| d. Contends Chris Rosenstock a knowledgeable person | e. Disputes, wants original documents to be produced |
| e.  Contends transfer or assignment is sufficient to assign beneficial interest in deed of trust. | f. Disputes, contends there is equity |
| f. Contends there is no equity | |

Debtor

## II.

## CONCLUSION

The motion should be denied on three grounds:

1.    The moving party offers no valuation and based on Debtor's appraisal of $2,500,000.00 (attached as Exhibit A), there is equity in the property.

2.    The Property is necessary for a reorganization because it is the Debtor's only source of income and the Debtor has an application pending to appoint a realtor to sell the property to realize the equity therein for the benefit of Debtor's creditors.

3.    Movant's statement in its moving papers (p.1, line 27) that the Debtor cannot provide adequate protection is blatantly false. The Debtor has been making payments of approximately $13,200.00 as adequate protection and proposes to make such payments or more until the Property is sold. This amount is approximately the interest due on the loan.

Based on the foregoing the Debtor respectfully requests that the Court deny the relief from stay motion in its entirety or continue the hearing to a date that is at least 120 days in the future, so as to give the Debtor a reasonable opportunity to market and sell the property for the benefit of creditors.

Respectfully submitted.

**W. AUSTIN COOPER**
A Professional Law Corporation

DATED: July 14, 2011          By: /s/ W. Austin Cooper
                                   W. Austin Cooper, Esq.
                                   Attorneys for the Debtor and
                                   Debtor-in-Possession

7

# EXHIBIT 1

# APPRAISAL REPORT


**Torch Lite Inn**
**500 Riverside Avenue**
**Santa Cruz, California**


**Prepared For:**
**Ms. Sabrina Patel**


**Valuation Date:**
**April 7, 2011**


**Prepared By**
**Independent Real Estate Research, Inc.**

Gerald F. Enders, SRPA/SRA
OREA Cert. #AG005454

**This is a Summary Appraisal**

# INDEPENDENT REAL ESTATE RESEARCH, INC.

*Property Appraisers & Consultants*

April 12, 2011

Ms. Sabrina Patel
500 Riverside Avenue
Santa Cruz, CA 95060

RE: 500 Riverside Avenue, Santa Cruz, CA

Dear Ms. Patel:

At your request, Independent Real Estate Research, Inc. has completed a narrative appraisal report of the real property located at 500 Riverside Avenue within the incorporated city of Santa Cruz, California. The subject property is comprised of a single parcel totaling approximately 37,600± square feet. The site is developed with a 38-unit visitor-serving motel facility; the three-building complex totals 13,715± square feet of gross building area. The purpose of the appraisal is to render an opinion of the market value of the subject property as of April 7, 2011, the primary inspection date.

The function of this appraisal is for use by the client to assist in bankruptcy proceedings. This is a Summary Appraisal, prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP), and Title XI of the Federal Institutions Reform Recovery and Enforcement Act of 1989 (FIRREA). The value opinion reported is qualified by the limiting conditions, and certifications, which are set forth in the report. It may not be distributed to or relied upon by other persons or entities without our written permission. In an effort to adhere to the requirements of FIRREA and the Uniform Standard of Professional Practice, we have estimated the market value of the subject under the applicable valuation scenarios, explained as follows:

**"Market Value As-Is"** means an estimate of the market value of a property in the condition observed upon inspection and as it physically and legally exists without hypothetical valuation scenarios, assumptions, or qualifications as of the date of the primary inspection (April 7, 2011). In this appraisal, the market value "as-is" is the fee simple interest of the real estate. Included are all chattels necessary to operate a motel facility (e.g. beds, furniture, linen, television sets, etc.). All of the motel sales analyzed were purchased for direct operation by the purchasers. All of the transactions included chattels.

Case: 11-54812    Doc# 56    Filed: 07/14/11    Entered: 07/14/11 18:04:02    Page 10 of
28

# TABLE OF CONTENTS

Summary of Salient Facts..................................................................................1
Assumptions & Limiting Conditions...............................................................3
Certification.......................................................................................................5
Purpose of the Appraisal..................................................................................6
Location and Property Identification..............................................................6
Property Rights Appraised.............................................................................7
Function of the Appraisal.................................................................................7
Ownership .........................................................................................................7
Definitions of Value Requested......................................................................7
Scope of the Appraisal Process......................................................................9
Competency Statement...................................................................................10
Sales History ...................................................................................................10
Exposure Period .............................................................................................11
Assessed Valuation & Taxes ........................................................................12
Regional Discussion ......................................................................................13
Community and Neighborhood Environs ...................................................21
Lodging Revenue Trends..............................................................................26
Site & Improvement Discussion ..................................................................30
Highest and Best Use Analysis ....................................................................41
Valuation (Fee Simple)..................................................................................45
Income Approach ...........................................................................................48
Sales Comparison Approach to Value.........................................................66
Reconciliation of Value Conclusions: Fee Simple.....................................83
Sales Marketing Period .................................................................................87
Addenda ...........................................................................................................88

ADDENDA

Standard Rule 1-2(e) of the Uniform Standards of Professional Appraisal Practice states that the appraiser must identify and consider the effect on value of any personal property, trade fixtures or intangible items that are not real property but are included in the appraisal. In the appraisal assignment, we have attempted to segregate the business or enterprise interest which may result from the operation of the motel by a separate management entity; that is, the compensation which is due to professional management and not the owner of the property. Also factored separately was the estimated value of the chattels that are necessary to operate a motel.

As a result of our examinations and analyses, we certify that in our opinion, the estimate of the Market Value of the subject in fee simple interest, as well as the segregated value estimates for the chattels and going concern, are as dated and stipulated at the end of this paragraph.

Valuation Date: April 7, 2011

Concluded Market Value
Two Million Five Hundred Dollars
($ 2,500,000)

Market Value of Chattels
One Hundred Fifty Thousand Dollars
($ 150,000)

Market Value of Going Concern
Two Hundred Sixty Five Thousand Dollars
($ 265,000)

Market Value of Real Estate Only
Two Million Eight Five Thousand Dollars
($ 2,085,000)
*The appraised values are based on 12-month exposure times.*

Respectfully Submitted,

Gerald F. Enders, SRPA/SRA
OREA Gen. Cert. #AG005454
Expiration Date: 11/4/2012

Tom Plumb
OREA Gen. Cert. #AG004304
Expiration Date: 6/8/2012

1900 Garden Road, Suite 210, Monterey   (831) 372-3181

# SUMMARY OF SALIENT FACTS

| | |
|---|---|
| Motel Name: | Torch Lite Inn |
| Property Location: | 500 Riverside Avenue, Santa Cruz |
| Assessor's Parcel Number: | 007-433-10 (Santa Cruz County) |
| Property Rights Appraised: | Fee Simple Estate |
| Valuation Date: | April 7, 2011 |
| Date of Report: | April 12, 2011 |
| Function of the Appraisal: | To conclude the market value of the Fee Simple Estate of the subject property |
| Sale of Subject in Past Three Years: | The subject property has not sold or been available for sale in the last 3 years, the required reporting period. |
| Property Type: | Visitor-serving motel |
| Structural Improvements: | 3-building complex totaling 13,715± sq. ft. with 38 guest units & manager's apartment |
| Construction Class: | Class "C" & "D" |
| Construction Quality: | Average |
| Construction Condition: | Average |
| Site Area: | 37,600± sq. ft. |
| Floor Area Ratio: | 36% |
| Zoning (City of Santa Cruz): | "RTB": Tourist Residential |
| Highest and Best Use "As Is": | Visitor Serving Motel |

| Assessed Value (2010-2011): | | |
|---|---|---|
| Land | $ | 662,426 |
| Improvements | $ | 1,403,083 |
| Total | $ | 2,065,509 |

Case: 11-54812   Doc# 56   Filed: 07/14/11   Entered: 07/14/11 18:04:02   Page 13 of 28

Real Estate Taxes (2010-2011):          $ 23,614.66

Flood Zone:                             Zone "A99": Panel#0603550332D (3/02/06)

| VALUE CONCLUSION: | |
| --- | --- |
| Fee Simple Value Conclusion: | $ 2,500,000 |
| Valuation Date: | April 7, 2011 |
| Reasonable Exposure Period | 12 months |

### Value Indications

| | |
| --- | --- |
| Reconciled Market Value: | $ 2,500,000 |
| Depreciated Value of Chattels: | $ 150,000 |
| Value of Going Concern: | $ 280,000 |
| Value of Real Estate Only: | $ 2,070,000 |

### Income Property Economics (Annual Projected Stabilized)

| | |
| --- | --- |
| Potential Gross Room Revenue | $ 520,000 |
| Plus: Miscellaneous Income | $ 10,400 |
| TOTAL ANNUAL REVENUE | $ 530,400 |
| Less: Operating Expenses: | $ 292,200 |
| Net Operating Income | $ 238,200 |

| | |
| --- | --- |
| Direct Capitalization Rate Applied: | 9.50% |
| Stabilized Annual Occupancy | 50% |
| Operating Expense Ratio | 55% |
| Daily Revenue/Available Room (REVPAR): | $73 |

Special Limiting Conditions to Appraisal:   None
Appraisers:                                 Gerald F. Enders, SRPA/SRA
                                            Tom Plumb

## ASSUMPTIONS AND LIMITING CONDITIONS

1. This is a Complete Summary Appraisal that is intended to comply with the reporting requirements set forth under Standard Rule 2-2a of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. The information contained in this report is specific to the needs of the client and for the intended use stated in this report. The appraiser is not responsible for unauthorized use of this report.

2. No responsibility is assumed for legal or title considerations. Title to the property is assumed to be good and marketable unless otherwise stated in this report. It is assumed that there are no detrimental Covenants, Conditions, and Restrictions, if any, applicable to the subject.

3. The property is appraised free and clear of any or all liens and encumbrances unless otherwise stated in this report.

4. Responsible ownership and competent property management are assumed unless otherwise stated in this report.

5. All engineering is assumed to be correct. Any plot plans and illustrative material in this report are included only to assist the reader in visualizing the property.

6. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

7. It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in this report.

8. It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless non-conformity has been stated, defined, and considered in this appraisal report.

9. It is assumed that all required licenses, certificates of occupancy or other legislative or administrative authority from any local, state, or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimates contained in this report are based.

10. Any sketch in this report may show approximate dimensions and is included to assist the reader in visualizing the property. Maps and exhibits found in this report are provided for reader reference purposes only. No guarantee as to accuracy is expressed or implied unless otherwise stated in this report. No survey has been made for the purpose of this report.

11. It is assumed that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless otherwise stated in this report.

Case: 11-54812    Doc# 56    Filed: 07/14/11    Entered: 07/14/11 18:04:02    Page 15 of 28

12. The appraisers are not qualified to detect hazardous waste and/or toxic materials. Any comment by the appraiser that might suggest the possibility of the presence of such substances should not be taken as confirmation of the presence of hazardous waste and/or toxic materials. Such determination would require investigation by a qualified expert in the field of environmental assessment. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. <u>The appraiser's value conclusion is predicated on the assumption that there is no such material on or in the property that would cause a loss in value unless otherwise stated in this report.</u> No responsibility is assumed for any environmental conditions, or for any expertise or engineering knowledge required to discover them. The appraiser's descriptions and resulting comments are the result of the routine observations made during the appraisal process.

13. The Americans with Disabilities Act (ADA) became effective January 26, 1992. The appraisers have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. Since the appraisers have no direct evidence relating to this issue, possible noncompliance with the requirements of ADA in estimating the value of the property has not been considered.

14. The distribution, if any, of the total valuation in this report between land and improvements applies only under the stated program of utilization. The separate allocations for land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

15. Possession of this report, or a copy thereof, does not carry with it the right of publication. It may not be used for any purpose by any person other than the party to whom it is addressed without the written consent of the appraiser, and in any event, only with proper written qualifications and only in its entirety.

16. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser, or the firm with which the appraiser is connected) shall be disseminated to the public through advertising, public relations, news sales, or other media without prior written consent and approval of the appraiser.

17. The information furnished by others is believed to be reliable. However, no warranty is given for its accuracy.

18. Any proposed improvements are assumed to be completed in a good workmanlike manner in accordance with the submitted plans and specifications.

500 Riverside Ave., Santa Cruz

## CERTIFICATION

Independent Real Estate Research, Inc. certifies, to the best of our knowledge and belief:

- The statements of fact contained in this report are accurate.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal unbiased professional analyses, opinions, and conclusions.
- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest or bias with respect to the parties involved.
- Our engagement and compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.
- This appraisal was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.
- Our analysis, opinions, and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice.
- Tom Plumb has completed a physical inspection of the property that is the subject of this report.
- No one provided significant professional assistance to those signing this report.
- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.
- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
- In accordance with the competency provision in the USPAP the appraisers certify that their education, experience and knowledge are sufficient to appraise the type of property being value and that no other person has provided significant professional assistance to the appraisers in the completion of the appraisal report.
- As of the date of this report, Gerald Enders, SRPA/SRA has not completed the requirements of the continuing education program of the Appraisal Institute.


------------------------------
Gerald F. Enders, SRPA/SRA
OREA Gen. Cert. #AG005454
Expiration Date: 11/4/2012

------------------------------
Tom Plumb
OREA Gen. Cert. #AG004304
Expiration Date: 6/8/2012

## PURPOSE OF APPRAISAL

The purpose of this appraisal is to conclude the market value of the subject property. "Market Value" as used in this appraisal, is defined as "the most probable price which a property should bring in a competitive and open market under all conditions requisite to a sale, the buyer and seller, each acting prudently, knowledgeably, and assuming the price is not affected by undue stimulus." Implicit in this definition is the consummation of a sale as of a specified date in the passing of title from seller to buyer under conditions whereby:

* Buyer and seller are typically motivated
* Both parties are well-informed or well-advised, each acting in what he considers his own best interest.
* A reasonable time is allowed for exposure in the open market
* Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto.
* The price represents the normal consideration for the property sold unaffected by special or creative financing or sale concessions granted by anyone associated with the sale.

*Source: Office of the Comptroller of Currency 12 CFR, part 34*

## LOCATION AND PROPERTY IDENTIFICATION

The subject property is a single-parcel located at the northeastern corner of Riverside Avenue and San Lorenzo Boulevard within the city limits of incorporated Santa Cruz, California. The subject property address is 500 Riverside Avenue, Santa Cruz, California, 95060-5124. The legal description was not available for review or inclusion in the report.

Case: 11-54812    Doc# 56    Filed: 07/14/11    Entered: 07/14/11 18:04:02    Page 18 of 28

## PROPERTY RIGHTS APPRAISED

The property rights appraised are those of the Fee Simple Estate, subject to existing liens and encumbrances, if any. No deductions have been made for costs to sell the property (such as brokerage commissions). Therefore, the values reported are equivalent to a gross sale price before fees, escrow costs, taxes, loans, etc. are deducted. The property has been valued as of April 7, 2011, consistent with the primary date of inspection.

## FUNCTION OF THE APPRAISAL

The function of the appraisal is to conclude market value for use by the client to assist in bankruptcy proceedings.

## OWNERSHIP

Title to the subject according to public records is vested as follows:

*Manuben Patel*

## DEFINITION OF VALUE REQUESTED

**Market Value "as is"** means an opinion of the market value of a property in the condition observed upon inspection and as it physically and legally exists without hypothetical conditions, assumptions, or qualifications as of the date of inspection. Reference is made to the market value definition provided by the OCC in 12CFR, part 34, as described on the previous page.

**Fee Simple Estate:** The property rights appraised include those of the Fee Simple estate. The Appraisal Institute defines the fee simple estate as *"absolute ownership unencumbered by any other interest or estate subject only to the four powers of government."* No deductions have been made for costs to sell the property (such as brokerage commissions). Therefore, the value reported is equivalent to a gross sale price before fees, escrow costs, taxes, loans, etc. are deducted.

**Leased Fee Estate:** The leased fee interest is defined by The Appraisal Institute as *"an ownership interest held by a landlord with the right of use and occupancy conveyed by lease to others; the rights of the lessor or the leased fee owner and leased fee are specified by contract terms contained within the lease."*

**Effective Date of Appraisal:** The date in which, or as of which, the value conclusion applies. Most frequently, this is the date of inspection for purposes of the appraisal. However, the effective date may be fixed at some prior time, or, in the case of proposed construction or development, at some time when the construction is presumed to be completed. In this appraisal report, the effective date of the appraisal coincided with the primary inspection date (April 7, 2011).

**Date of Report:** The date on which a value was concluded and/or reported (April 12, 2011).

**Extraordinary Assumption:** An assumption, directly related to a specific assignment, which, if found to be false, could alter the appraisers' opinions or conclusions.

**Hypothetical Condition:** That which is contrary to what exists but is supposed for the purpose of analysis.

**Extraction:** A method of estimating land value in which an appraiser estimates the depreciated cost of the existing improvements on site and deducts this amount from the total sales price to arrive at an estimated sale price for the land.

## SCOPE OF THE APPRAISAL PROCESS

This appraisal has been made in compliance with the requirements of the Comptroller of Currency, the Uniform Standards of Professional Appraisal Practices (USPAP). In the preparation of this appraisal, we have inspected the subject property, consulted with City of Santa Cruz and County of Santa Cruz officials, and reviewed information provided by the client. To obtain the necessary data to arrive at the stated conclusions, an inspection of the property and neighborhood was conducted. We have relied on the Santa Cruz County Assessor Plat Map for the size of the subject parcel; a site survey was not available.

We have analyzed the surrounding region's real estate market considered reflective of the subject property. The most comparable properties were included in this report; several other comparables were also analyzed, but not specifically shown since they did not provide any additional support to the final value conclusion.

Additionally, economic conditions in the subject's market area have been observed and reported in this appraisal. The data regarding these transactions is presented here in the manner in which it was provided to the appraiser. No information has been included which is not believed to be accurate.

Two valuation methodologies were applied: Direct Sales Comparison Approach and Income Capitalization Approach. The Income Capitalization was considered primary in the valuation process; the Direct Sales Comparison provided secondary valuation support. The Cost Approach, which does not necessarily reflect the thinking of investors, was not considered applicable or necessary and was not included in the valuation process. Reliability of the Cost Approach was limited by the blended effective age of the subject buildings and the lack of developable land within the subject's market area.

Case: 11-54812    Doc# 56    Filed: 07/14/11    Entered: 07/14/11 18:04:02    Page 21 of 28

## COMPETENCY STATEMENT

In accordance with the competency provision in the USPAP, the appraisers certify that their education, experience and knowledge is sufficient to appraise the type of property being valued and that no appraiser has provided significant professional assistance to the person inspecting the subject property in the completion of the analysis other than those co-signing.

The appraisers' analysis, opinions and conclusions were developed and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP).

This appraisal assignment was not based on a requested minimum valuation, a specific valuation or the approval of a loan. The appraisers' compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value concluded, the attainment of a stipulated result or the occurrence of a subsequent event.

We have appraised this property type and believe that we have the knowledge and experience necessary to complete this appraisal assignment. Please see appraisers' qualifications in the Addenda for additional information.

## SALES HISTORY

The subject property has not sold during the past three years, the required reporting period. To the best of our knowledge the subject property has not been made available for sale during that same time period.

500 Riverside Ave., Santa Cruz

## EXPOSURE PERIOD

*USPAP* requires that an estimate of reasonable exposure time be made in the performance of an appraisal where any value is being sought. In the USPAP, the Comment to Standards Rule 1-2(b) states:

> *When estimating market value, the appraiser should be specific as to the estimate of exposure time linked to the value conclusion.*

The Comments to Standard Rules 2-2(b)(v) states:

> *Defining the value to be concluded requires both an appropriately referenced definition and any comments need to clearly indicate to the reader how the definition is being sought.*

Reasonable exposure time is one of a series of conditions in most market value definitions. Exposure time is always presumed to precede the effective date of the appraisal. Exposure time may be defined as follows: the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based upon an analysis of past events assuming a competitive and open market.

Exposure time is different for various types of real estate and under various market conditions. It is noted that the overall concept of reasonable exposure encompasses not only adequate, sufficient and reasonable time but also adequate, sufficient and reasonable effort. This statement focuses on that time component. The fact that exposure time is always presumed to occur prior to the effective date of the appraisal is substantiated by related facts in the appraisal process: supply/demand conditions as of the effective date of the appraisal; the use of current cost information; the analysis of historical sales information (sold after exposure and after completion of negotiations between the seller and buyer); and the analysis of future income expectancy estimated from the effective date of the appraisal.

Considering the specifics of the subject property, as well as the market conditions over the past several months, we would project a reasonable exposure time for the subject property, relative to the value being defined and the property rights appraised, to be **12 months**. This assumes the property was professionally marketed, and listed at a price consistent with our market value conclusion. A significantly higher list price would result in a longer period to sell this property.

## ASSESSED VALUE AND TAXES

According to the most recent information available from the County of Santa Cruz, the subject's parcel had an assessed value as follows:

| Assessed Value (2010-11): | | | |
|---|---|---|---|
| | Land | $ | 662,426 |
| | Personal Property | $ | 0 |
| | Improvements | $ | 1,403,083 |
| | Total | $ | 2,065,509 |

Real Estate Taxes (2010-11):  $ 23,614.66

According to the Santa Cruz County Tax Collector the full tax obligation for the 2010/2011 year is $23,614.66 or 1.143% of assessed valuation. Public records indicate that neither installment of the 2010-2011 property tax bill has been paid. Unpaid prior year balances are indicated with a full pay-off of $82,122.15. The appraised value concluded and presented in this report does not factor unpaid property tax obligations.

California State Law requires the assessment of any parcel upon change of ownership or substantial completion of construction. When the subject changes ownership at its market value, the property will be reassessed and taxes will be adjusted appropriately.

## REGIONAL DISCUSSION & ANALYSIS, SANTA CRUZ COUNTY

*Market value is affected by a number of externalities; e.g., geographic, economic, environmental, and governmental forces; utility, supply & demand and effective purchasing power. Real estate is affected by externalities more than any other economic good, service, or commodity. It is imperative that an appraiser observes and analyzes external influences in order to identify patterns and trends and evaluate how they relate to the subject property. Trends such as population shifts, declining apartment occupancy rates, or increased housing sales in a specific area are relevant in order to understand the real estate marketplace. Thus the Regional Discussion & Analysis is important in this appraisal because it establishes the basis for determining the highest & best use of a property as well as information used in applying the three approaches to value. The scope of this regional analysis relates to the type of property being appraised, its complexity and the approaches used to estimate value.*

Santa Cruz County is located in the Monterey Bay Area north of Monterey County. Both counties are situated parallel to the Pacific Ocean and are supported by tourism, agriculture and government, with increasing reliance on computer and software manufacturing. Santa Cruz County is the second smallest county in California with an area measuring approximately 441 square miles, or 282,240 acres. Its location along Monterey Bay and close proximity to Monterey, San Francisco, and the Silicon Valley contribute to the desirability of the area. The county features a wide range of natural attractions, including beaches and numerous state parks. The county offers many tourist attractions, including Henry Cowell Redwoods State Park, Big Basin State Park, Santa Cruz Beach Boardwalk, the Mystery Spot, Capitola Village, and the quaint downtowns of Santa Cruz, Soquel, and Aptos. These prominent and attractive recreational amenities, in conjunction with a distinctly liberal lifestyle, have attracted a diverse base of residents and businesses that value these qualities.

### Population

Recent population estimates from the U.S. Census indicate a county population of 256,000, most of whom live clustered along the coastal sites of Santa Cruz, Capitola, and Watsonville. Santa Cruz is the largest and the oldest city in the

Case: 11-54812   Doc# 56   Filed: 07/14/11   Entered: 07/14/11 18:04:02   Page 25 of 28

## AREA MAP



county and is home to approximately 60,000 residents; it also serves as the county seat. The population has been increasing steadily since the 1950s despite periodic growth control ordinances and the high cost of real estate. The vast majority of the recent growth has been concentrated in the southern end of the County, from Aptos to Watsonville, and, to a lesser degree, Scotts Valley to the north. Just over half of Santa Cruz's population lives in the unincorporated areas.

### Communities within Santa Cruz County

There are four incorporated cities in Santa Cruz County: Santa Cruz, with 12 square miles; Scotts Valley, with 5 square miles; Capitola, with nearly 2 square miles, and Watsonville, with 6 square miles. An elected five-member Board of Supervisors governs Santa Cruz County. City councils govern the cities of Capitola, Santa Cruz, Scotts Valley, and Watsonville.

Unincorporated areas of Santa Cruz County comprise 417 total square miles and approximately 55% of the County's total population. These communities are located throughout the county: to the north, Davenport; the San Lorenzo Valley towns of Felton, Ben Lomond, Brookdale, and Boulder Creek in the Santa Cruz Mountains; Live Oak, Seacliff, Soquel, and Aptos in mid-county; and La Selva Beach, Freedom, and Corralitos to the south. These are topographically and culturally diverse, well-established communities that serve to connect the larger incorporated cities in the County.

### Transportation

Transportation in Santa Cruz County is typically by car from either Highway 17 or Highway 1. Highway 17 connects the county with Santa Clara County and the greater Bay Area to the north. In San Jose, Highway 17 becomes Freeway 880. In Santa Cruz, Highway 17 becomes Ocean Street. Highway 1 is the state's coastal route, running the full length of California from San Diego to the Oregon state

Case: 11-54812    Doc# 56    Filed: 07/14/11    Entered: 07/14/11 18:04:02    Page 27 of
28

border. The highway connects Santa Cruz County with Monterey County and the Monterey Peninsula to the south, and runs north along the coast to the San Mateo County border. Highway 17 is essentially the only conduit of access through the Santa Cruz Mountains, linking Santa Cruz and the Silicon Valley area. In the summer months, Highway 17 supports an enormous traffic volume, as Santa Cruz beaches are a prime destination for inland residents. In addition to State Highways 1 and 17, other major roadways within Santa Cruz County are Highways 9, 129 and 152.

A current highly polemic issue within Santa Cruz County, as well as neighboring Santa Clara County, is the proposed widening of Highways 1 and 17. Both highways are currently traveling at maximum flow, and expansions of both have been heavily and controversially discussed. The addition of a third lane on southbound Highway 1, from the freeway Fishhook to the Soquel Avenue exit, occurred approximately two years ago and was intended for safety reasons rather than capacity improvements. It is unrelated to the ongoing widening debate.

Santa Cruz County is also served by bus and rail as well as by sea; the only area airport is the Watsonville Municipal Airport. The closest international airport is in San Jose, 32 miles to the north. Other nearby airports include San Francisco International, Oakland International, and Monterey Peninsula Airport. Overall, access into and out of Santa Cruz County is adequate. The Southern Pacific Railroad Company provides rail; transit companies include the Santa Cruz Metropolitan Transit District, Greyhound, Peerless Stages, Cal Train, and Santa Cruz County Share-a-Ride.