1  NANCY J. JOHNSON, CA STATE BAR NO. 111615
   LAURA PALAZZOLO, CA STATE BAR NO. 210954
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  nancy.johnson@berliner.com
   laura.palazzolo@berliner.com
6
   STEVEN SIBLEY, CA STATE BAR NO. 152365
7  DINAPOLI & SIBLEY
   TEN ALMADEN BOULEVARD
8  SUITE 1250
   SAN JOSE, CALIFORNIA 95113-2233
9  TELEPHONE: (408) 999-0900
   FACSIMILE: (408) 999-0191
10 ssibley@dslaw.net

11 ATTORNEYS FOR CREDITOR PACIFICA L 33, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br><br>MANUBEN PATEL,<br><br>            Debtor. | CASE NO.  11-54812<br><br>PACIFICA L33, LLC'S REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY<br><br>Date:    July 20, 2011<br>Time:   2:00 p.m.<br>Dept.:   3070<br>Judge:  Hon. Charles Novak |

Debtor Manuben Patel's Opposition to Pacifica L33, LLC's ("Pacifica") Motion for Relief From Stay is meritless. No matter how she tries to work them, the numbers simply do not add up.

1)   <u>Debtor Has No Equity In The Property</u>.

The Debtor's own appraiser values the property at $2,500,000, and the Debtor does not dispute owing Pacifica $2,412,230.42 and property taxes of $93,000. Adding those two together produces a sum of $2,505,230 – in excess of the Debtor's own estimation of value.

CASE NO. 11-54812
-1-
PACIFICA L33, LLC'S REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY

It is therefore of no import that the Debtor believes Commercial Realty Experts may convert its debtor to equity, or that the City of Santa Cruz may ultimately accept a compromise settlement from a third party, or that she intends to pay the property tax arrearages over the next five years. (Opposition at p. 4, ll. 4-11) As an initial matter, the Debtor is an individual, and the Torch Lite Inn is her "dba." There is no equity position for Commercial Realty Experts to take. Moreover, the Debtor has not submitted a single declaration from any of these creditors attesting to these alleged negotiations and agreements. Notably, Commercial Realty Experts has no filed an opposition to the relief requested. And, as Pacifica will further explain below, the Debtor's current budget does not project sufficient income, and the Debtor's historical income does not support, the current payment of property taxes, much less any excess for back taxes.

By the Debtor's own admission, at this moment in time the property is worth $2,500,000 and there are current valid encumbrances against the property in the amount of at least $4,955,230.42. (Opposition, p. 3, lines 21-27). By no stretch of the imagination is there equity in this property for the Debtor at this time or (realistically) at any time in the foreseeable future.

2) <u>Pacifica Is Not Adequately Protected</u>.

As set forth above, the Debtor owes more to Pacifica and back property taxes than the property is worth, so there is no equity cushion for Pacifica. This contention is further supported by the Debtor's own appraisal.

For example, the appraiser makes it clear that the market value of the real property is only $2,085,000. (Doc. #56, p. 28). The rest of the $2,500,000 is based on valuing the chattels (furniture, etc.) at $150,000, whereas the Debtor has scheduled those assets at a value of less than $40,000 (see Schedule B at items 28-30). The remainder of the value is based on the market value of a going concern. However, the Debtor has given this "asset" no value on her Schedule B, and Pacifica would note that without permission to use Pacifica's cash collateral to operate the Hotel, there is no going concern value. Pacifica has specifically refused that consent (Doc. # 14) and continues to object to the Debtor's use. As well, the $2,500,000 value is wholly based on revenues exceeding the Debtor's projections ($530,000 when the debtor made only $518,000 in 2010 and only $45,000 the first three months of 2011), and an Operating Income for the property

at $238,200 (Doc 56-3, page 9 of 19) where the Debtor currently has a negative operating income. Finally, the appraiser admits on page 87 of his appraisal (Doc. 56-3, page 13 of 19) that the $2,500,000 value is based on a twelve month marketing period. The Debtor cannot reasonably expect creditors to wait that long for a sale, and a speedier sale would necessarily be at a lower price.

But Pacifica really need not quibble with the appraisal when the more obvious concern is the Debtor's proposal to pay Pacifica her contract amount of more than $18,900 per month (or even the $13,200 it paid last month) when her historical and projected income is insufficient to support that amount and still keep current on her post-petition obligations.

The Debtor's own appraisal belies her ability to do what she has promised. Page 49 of the appraisal (Doc. #56-2, page 5 of 25) sets forth what the appraiser purports are the Debtor's own reported income figures for the Torch Lite Inn. In 2009, room revenues were insufficient to pay the contract amount on Pacifica's note for five months out of the year. In other words, if the Debtor paid Pacifica, she would have no money to pay any other bill. Revenues in 2010 were better, but still the Debtor only brought in sufficient revenues to meet her recently submitted budget in four out of the twelve months. For the first three months of 2011, the Debtor again could not have paid Pacifica in full, much less any other creditor in addition to Pacifica. The Debtor has timely filed her bankruptcy petition in time to scrape off (and likely pocket) the last little bit of cream in terms of revenues for this year. There is no possible way she could really believe she is going to be able to continue to make adequate protection payments beyond next month and, really, what is the point of dragging this out another month?

3) <u>The Property Is Not Necessary For An Effective Reorganization</u>.

The fact that the property is the Debtor's business is of no consequence in the context of this motion if that business is providing no income to the Debtor. The Debtor has not amended its Statement of Financial Affairs, which clearly shows that the Debtor has not made a single cent from her businesses in the past two years. The Debtor's Opposition does not dispute that her only income is $744 per month. The Debtor claims her plan will be funded from income generated by the hotel, but, as set forth above, the historical and projected income from the

CASE NO. 11-54812 -3-
PACIFICA L33, LLC'S REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM STAY
\LPALA\853875.1
071811-19479001

Case: 11-54812    Doc# 67    Filed: 07/19/11    Entered: 07/19/11 09:30:50    Page 3 of 5

property insures a negative cash flow after next month – even if she pays no other creditor but Pacifica. Even by her own appraiser's numbers, she cannot profit from a sale of the property, so hiring a realtor is not going to add to the amount available to pay creditors.

Further to the issue of Debtor's ability to confirm a plan, Pacifica directs the Court's attention to Debtor's estimates with respect to her other property – the Santa Cruz Inn. The Debtor's June MOR shows revenues for the month of only $30,000. The Debtor's Cash Collateral Motion budget estimates expenses (without paying any mortgage expense) of $28,393. In addition, the Debtor proposes to pay both lenders in full, for a total mortgage expense of nearly $18,000. Debtor's budget therefore cannot effectively reserve for property taxes even in these profitable winter months.

The Debtor has filed a <u>personal</u> bankruptcy. Her plan must provide for sufficient personal income to pay something to creditors. At the moment, the Debtor owes in excess of $8.5 million dollars (secured) on income of $744 per month. She has not been able to establish how negotiating with the second lender or the City of Santa Cruz creates equity. Once Pacifica has established the Debtor has no equity, the burden shifts to the Debtor to establish a reasonable probability of confirming a plan in a reasonable period of time. With both of the Debtor's businesses losing money, the chances of her confirming a plan are almost zero. There is simply no way for the Debtor to rearrange the numbers to confirm a plan – not now, not ever.

4) <u>Prejudicial Use of Cash Collateral Without Permission Is A Further Grounds For Immediate Relief</u>.

The Debtor has been on notice since May 26, 2011 that Pacifica objected to the Debtor's use of Pacifica's cash collateral. The Debtor did not bring a motion to get this Court's permission until almost six weeks later – waiting until Pacifica filed its Motion for Relief From Stay. According to the Debtor's most recent Operating Report, the Torch Lite Inn collected revenues in excess of $74,000 last month and total revenues to date of nearly $81,000. According to the Debtor's Declaration in support of her Motion to Use Cash Collateral, all receipts from the Torch Lite Inn have been deposited into a DIP account that now has on $25,000 in it. (Doc. # 59-1, ¶ 8). According to the Debtor's own exceedingly generous budget (Doc. #59,

page 7 of 11), expenses for the Torch Lite should only have been $36,000. As a technical matter, the DIP account should have $81,000 in it. But even if the Debtor improperly used the revenue to pay expenses, the difference between $74,000 June income and $33,000 June expenses is $41,000. The Debtor has misappropriated at least $16,000 in a single month[1], to Pacifica's obvious prejudice. In point of fact, it may be more than that, since the Debtor's May Monthly Operating Report showed current assets in excess of $12,000. That means the Debtor only effectively added $13,000 of the $74,000 in June revenue to its DIP account. Pacifica therefore requests immediate relief from stay and an order requiring the Debtor to turn over her bank accounts to Pacifica by end of business July 22, 2011, along with a full post-petition accounting.

For the reasons set forth above, and in its original Motion, Pacifica respectfully requests that its Motion for Relief From Stay be granted with waiver of the appeal period.

DATED: JULY 18, 2011           BERLINER COHEN

BY: /s/ Laura Palazzolo
    NANCY J. JOHNSON
    LAURA PALAZZOLO
    ATTORNEYS FOR CREDITOR PACIFICA L 33, LLC

---

[1] Pacifica notes the Debtor's declaration indicates additional credit card revenues are expected to be deposited, but that was presumably true of May as well, and no where does she state what those expected credit card deposits will be, or on what date they are usually deposited.