1  Stephen J. Kottmeier (State Bar No. 077060)
   Michaeline H. Correa (State Bar No. 215215)
2  HOPKINS & CARLEY
   A Law Corporation
3  The Letitia Building
   70 S First Street
4  San Jose, CA 95113-2406

5  *mailing address:*
   P.O. Box 1469
6  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
7  Facsimile:    (408) 998-4790

8  Attorneys for Secured Creditor
   HERITAGE BANK OF COMMERCE

9

                    UNITED STATES BANKRUPTCY COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN JOSE DIVISION
12

13  IN RE                                CASE NO.  11-54812

14  MANUBEN PATEL                        CHAPTER 11

15            Debtor.                    **STIPULATION FOR USE OF HERITAGE
                                         BANK OF COMMERCE'S CASH
16                                       COLLATERAL WITH RESPECT TO
                                         MOTEL SANTA CRUZ**
17

18                                       Hon. Charles Novack

19

20                         **INTRODUCTORY STATEMENT**

21        Pursuant to this Court's August 10, 2011 Order on Debtor's Motion to Use Cash

22  Collateral with Respect to Motel Santa Cruz [Dkt. No. 94] (the "Order"), debtor in possession

23  Manuben Patel (the "Debtor") has been using the asserted cash collateral of Home Bank of

24  California ("Home Bank"), Heritage Bank of Commerce ("HBC") and Commercial Realty

25  Experts ("CRE", collectively with Home Bank and HBC, the "Secured Creditors"); namely, the

26  revenues (the "Cash Collateral") generated from the Motel Santa Cruz (the "Motel") located at

27  370 Ocean Street, Santa Cruz, CA 95060 (the "Property"). The Order authorized the use of Cash

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

728\875180.3

Collateral through September 30, 2011. The Debtor has requested continued use of HBC's Cash Collateral through December 15, 2011, and HBC has agreed to such continued use on the terms and conditions set forth below.

**AGREEMENT**

Now, therefore, the Debtor and HBC stipulate and agree as follows:

1.     <u>Term</u>. The Debtor's right to use cash collateral of HBC shall become effective upon the entry of an order by the Bankruptcy Court approving the terms of this Stipulation and shall continue in effect through December 15, 2011, at which time the Debtor's right to use of such Cash Collateral, whether Pre-Petition Collateral or Post-Petition Collateral, shall terminate, except as otherwise agreed in writing by HBC and the Debtor or unless authorized by order of the Bankruptcy Court. In the event that the Debtor and HBC agree in writing to a later time, then the Debtor's use of Cash Collateral may continue subject to the terms and conditions of this Stipulation and the Court's order approving it.

2.     <u>Conditions to Use of Cash Collateral</u>.

(a)     The Debtor shall file a proposed plan of reorganization and disclosure statement not later than October 15, 2011. Debtor's failure to timely file a plan and disclosure statement shall constitute a Default under paragraph 5 below.

(b)     If the Debtor fails to timely make any payment in full due to Home Bank, HBC may file an *ex parte* motion for relief from stay to exercise its state law remedies and rights under certain loan documents to record a notice of default with respect to the Property. The Debtor shall support any such stay relief motion filed by HBC. Debtor's failure to consent to stay relief on these terms shall constitute a Default under paragraph 5 below.

3.     <u>Replacement Liens</u>. HBC is hereby granted, effective as of the Petition Date, post-petition replacement liens ("Post-Petition Replacement Liens") on all presently-owned or hereafter-acquired assets of the Debtor ("Post-Petition Collateral") described as collateral in HBC's loan documents, to the same extent and with the same priority as each had a valid and perfected security interest in the (i) pre-petition collateral ("Pre-Petition Collateral"), including all cash collateral, and (ii) all proceeds therefrom. Said Post-Petition Replacement Liens shall be

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

728\875180.3

- 2 -

Case: 11-54811    Doc# 77    Filed: 09/07/11    Entered: 09/07/11 09:57:27    Page 2 of 8

STIPULATION FOR CONTINUED USE OF CASH COLLATERAL

secured in accordance with the provisions of Bankruptcy Code sections 361 and 363(e) and, to

the extent that the Post-Petition Replacement Liens are insufficient to adequately protect HBC's

claims, then HBC shall also be allowed an administrative priority claim in accordance with the

provisions of Bankruptcy Code section 507(b) for any deficiency. The Debtor shall execute such

documents as HBC reasonably requires to perfect its security interests. HBC may file or record

any document to evidence the perfection of the security interests granted hereunder, but entry of

the Bankruptcy Court's order approving this Stipulation shall constitute a validly perfected first

lien and security interest upon the Post-Petition Collateral, to the same extent as HBC had a

validly perfected in the Pre-Petition Collateral, without further act. HBC is not granted any

security interest in avoidance actions under 11 U.S.C. §§ 544-551, inclusive. The Post-Petition

Replacement Lien and super priority claim granted to HBC above shall be subject and

subordinate to a carve-out (the "Carve-Out") for the following: the payment of compensation and

expense reimbursement to any trustee hereafter appointed in this action. Further, such Carve-Out

shall include quarterly fees required to be paid, pursuant to 28 U.S.C. § 1930(a)(6) and any fees

payable to the clerk of the Bankruptcy Court. Except as specifically set forth herein, no other

carve-outs are permitted.

4. <u>Compliance With Budget</u>. The Debtor's revenues and expenses for the Motel

Santa Cruz shall be as set forth in the Cash Flow Budget for the Motel Santa Cruz attached hereto

as **Exhibit A**. Notwithstanding the foregoing sentence, the Debtor's revenues and expenses may

vary from single line items within the Cash Flow Budget provided that the Debtor is not

otherwise in default of this Order and provided that at the end of each month for the Cash Flow

Budget, (i) the Debtor's actual total Operating Expenses, paid in cash, for any monthly reporting

period, will not have a negative variance in excess of five percent (5%) from the total Operating

Expenses shown in the Cash Flow Budget for the particular month and (ii) the Debtor's actual

Net Operating Income for the reporting period does not have a negative variance greater than five

percent (5%) for the particular month from the Net Operating Income shown in the respective

Cash Flow Budget for that month. For each month during the term of this Stipulation, Debtor

shall deliver to HBC no later than the 10th day of each month, a written report in the same format

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

728\875180.3

- 3 -

Case: 11-54311    Doc# 104    Filed: 09/07/11    Entered: 10/07/11 09:57:27    Page 3 of 8
STIPULATION FOR CONTINUED USE OF CASH COLLATERAL, etc.

as the budget showing the actual income and expenses for the preceding month compared to the budgeted income and expenses. In addition, for each month during the term of this Stipulation, the Debtor shall remit, by no later than the 10th of each month, payment to HBC in the sum of $9,263.00.

     5.   <u>Default</u>.

        (a)   Except as set forth in paragraph 7 below, upon the occurrence of a default under the terms of this Stipulation, HBC shall provide the Debtor and, so long as this case in pending, its counsel of record, with written notice stating that a default has occurred (which notice may be given by facsimile transmission or electronic mail). Upon the failure of the Debtor to cure such default by 5:00 p.m. on the third business day following the day on which such notice is given, the Debtor's right to use cash collateral shall terminate at such time, and the Debtor shall stop using cash collateral of HBC at that time, unless the Bankruptcy Court has issued a further order authorizing use of cash collateral.

        (b)   In the event that a default is not cured within its specified period, the parties hereto agree that, subject to approval of this Court, HBC may apply for an order permitting relief from the automatic stay upon five days' written notice to the Debtor, its counsel, a Trustee if any, the U.S. Trustee, counsel for the Committee or, if such committee is disbanded or not formed, the other Secured Creditors and the 20 largest unsecured creditors and other persons or entities who have requested notice in this Case. Such notice may be by email transmission or by facsimile transmission if such transmission is available, but otherwise shall be by such means as may be available to permit expedited delivery. Pending the determination of the motion of HBC, the Debtor shall have no right to use any Cash Collateral, unless authorized by further Bankruptcy Court order. Nothing herein shall prohibit the Debtor from making a motion before the Bankruptcy Court to request continued use of Cash Collateral.

        (c)   Any exercise of rights and remedies by HBC with respect to property of the estate is subject to Section 362(a) of the Bankruptcy Code.

     6.   <u>Reservation of HBC's Rights.</u>  HBC has the right to waive any of the obligations of the Debtor or the rights, remedies, or powers granted herein, including the Debtor's reporting

1   requirements; and HBC shall have no obligation or duty to any other person or party with respect

2   to the waiver or exercise of said obligations, rights, remedies or duties. Delay in or failure to

3   exercise any rights, remedies or duties shall not subject HBC to any liability to any other person

4   or party, nor shall any other person or party rely upon, or in any way assert as a defense to any

5   obligation owing to HBC by such delay or failure. In addition, by consenting to this Stipulation,

6   HBC waives none of its rights with respect to moving for relief from stay or plan confirmation.

7       7.    Payment of TOT.   Debtor shall pay its post-petition transient occupancy taxes to

8   the City of Santa Cruz as and when due. Failure to make such payment shall be a breach of this

9   Stipulation for which no notice or opportunity to cure is provided.

10      8.    Binding Effect.  This Stipulation shall be binding upon and inure to the benefit of

11  the parties hereto and their successors or assigns. Each individual signatory to this Stipulation

12  warrants that he/she is authorized to enter into this Stipulation on behalf of the party on whose

13  behalf this Stipulation is executed.

14      9.    Definitions.   In addition to the terms defined hereinabove, the following term as

15  used herein shall have the definition specified: "Cash Collateral" shall have the definition set

16  forth in Bankruptcy Code section 363(a).

17      10.   Counterparts.  This Stipulation may be executed in counterparts.

18      11.   Approval By Court.  This Stipulation and the parties' agreement thereto are

19  conditioned upon approval of the Bankruptcy Court.

20  Dated:  September 30, 2011

21  MOTEL SANTA CRUZ                    HERITAGE BANK OF COMMERCE

22

23  By: _____        By: _____
    Name: Manuben Patel                 Name: Andre Poe
24  Title:  Debtor                      Title:  Vice President

25

26

27

28

STIPULATION FOR CONTINUED USE OF CASH COLLATERAL; consent

requirements; and HBC shall have no obligation or duty to any other person or party with respect to the waiver or exercise of said obligations, rights, remedies or duties. Delay in or failure to exercise any rights, remedies or duties shall not subject HBC to any liability to any other person or party, nor shall any other person or party rely upon, or in any way assert as a defense to any obligation owing to HBC by such delay or failure. In addition, by consenting to this Stipulation, HBC waives none of its rights with respect to moving for relief from stay or plan confirmation.

7.     Payment of TOT.  Debtor shall pay its post-petition transient occupancy taxes to the City of Santa Cruz as and when due.  Failure to make such payment shall be a breach of this Stipulation for which no notice or opportunity to cure is provided.

8.     Binding Effect.  This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their successors or assigns.  Each individual signatory to this Stipulation warrants that he/she is authorized to enter into this Stipulation on behalf of the party on whose behalf this Stipulation is executed.

9.     Definitions.  In addition to the terms defined hereinabove, the following term as used herein shall have the definition specified:  "Cash Collateral" shall have the definition set forth in Bankruptcy Code section 363(a).

10.   Counterparts.  This Stipulation may be executed in counterparts.

11.   Approval By Court.  This Stipulation and the parties' agreement thereto are conditioned upon approval of the Bankruptcy Court.

Dated: September 10, 2011

MOTEL SANTA CRUZ                              HERITAGE BANK OF COMMERCE

By:  MANUBEN PATEL                            By:  _____
Name: Manuben Patel                           Name: Andre Poe
Title:  Debtor                                Title:  Vice President

1
2
3
4
5
**APPROVED AS TO FORM:**

6   W. AUSTIN COOPER, A PROFESSIONAL          HOPKINS & CARLEY,
    CORPORATION                                A LAW CORPORATION

7
8   By:  _W. Austin Cooper_____           By:  _____
9        W. Austin Cooper, Esq.                    Stephen J. Kottmeier, Esq.
         Attorneys for Debtor                      Attorneys for Secured Creditor
10                                                  Heritage Bank of Commerce
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case: 11-54812    Doc# 117    Filed: 10/07/11    Entered: 10/07/11 09:57:27    Page 7 of 8

## CERTIFICATION

I have read the foregoing stipulation; to the best of my knowledge, information and belief, formed upon reasonable inquiry, the terms of the stipulation are in conformity with the Court's Guidelines For Cash Collateral And Financing Motions And Stipulations. I understand and have advised the Debtor In Possession that the court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the court determines that a material element of the stipulation is not disclosed in the Introductory Statement.

W. AUSTIN COOPER, A PROFESSIONAL
CORPORATION

By: _____
W. Austin Cooper, Esq.
Attorneys for Debtor

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

728\875180.2875180.3

- 7 -

STIPULATION FOR CONTINUED USE OF CASH COLLATERAL; CASE NO. 11-54812

Case: 11-54812    Doc# 117    Filed: 10/07/11    Entered: 10/07/11 09:57:27    Page 8 of 8